IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,            )
                                     )
            Plaintiff,               )
                                     )
                                     ) Case No.
        vs.                          ) 8:22-CR-00259-WFJ-AEP-7
                                     )
                                     )
AUGUSTUS C. ROMAIN, JR.,             )
                                     )
            Defendant.               )

_____

**INITIAL APPEARANCE, ARRAIGNMENT AND DETENTION HEARING**
**BEFORE THE HONORABLE SEAN P. FLYNN**
**UNITED STATES MAGISTRATE JUDGE**

**JUNE 5, 2023**
**3:12 P.M.**
**TAMPA, FLORIDA**
_____

        Proceedings transcribed via courtroom digital audio
recording by transcriptionist using computer-aided
transcription.
_____

**DAVID J. COLLIER, RMR, CRR**
FEDERAL OFFICIAL COURT REPORTER
801 NORTH FLORIDA AVENUE, 7TH FLOOR
TAMPA, FLORIDA  33602

**APPEARANCES:**

**FOR THE GOVERNMENT:**

          Daniel J. Marcet

          United States Attorney's Office

          400 North Tampa Street, Suite 3200

          Tampa, Florida  33602

          (813) 274-6000


**FOR THE DEFENDANT AUGUSTUS C. ROMAIN, JR.:**

          Daniel Mario Hernandez

          Daniel M. Hernandez, P.A.

          P.O. Box 173165

          Tampa, Florida  33672

          (813) 875-9694

```
 1                    P R O C E E D I N G S
 2                    - - - o0o - - -
 3          THE COURT:  All right.  Good afternoon, everyone.
 4          MR. MARCET:  Good afternoon.
 5          THE COURT:  Mr. Calderon, would you please call the
 6   last case.
 7          COURTROOM DEPUTY:  In the matter of United States of
 8   America versus Augustus C. Romain, Jr., Criminal Case Number
 9   8:22-CR-259-WFJ-AEP.
10          THE COURT:  Counsel, please make appearances.
11          MR. MARCET:  Good afternoon, Your Honor.
12   Daniel Marcet on behalf of the United States.
13          THE COURT:  Good afternoon.
14          MR. HERNANDEZ:  Good afternoon, Your Honor.
15   Daniel Hernandez on behalf of Mr. Romain.
16          THE COURT:  All right.  Good afternoon,
17   Mr. Hernandez.  Thank you for being here.
18          And good afternoon to you, Mr. Romain.
19          THE DEFENDANT:  Good afternoon, Your Honor.
20          THE COURT:  Ms. Romain.
21          Ms. Romain, would you please pull the microphone
22   closer to you.
23          All right.  Thank you.
24          So you are here today because you've been charged
25   with a felony pursuant to a Superseding Indictment.  Have you
```

1   received a copy of that Superseding Indictment?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  All right.  Now, you previously had your

4   initial appearance before a judge in Georgia; is that correct?

5              THE DEFENDANT:  I believe so, Your Honor, but

6   I waived it.

7              THE COURT:  Okay.  Well, at that proceeding were you

8   advised of the allegations against you and the rights that you

9   have?

10             THE DEFENDANT:  No, Your Honor.

11             THE COURT:  Okay.  Well, I'll go over that with you

12  here today then.

13             All right.  As I mentioned, you've been charged with

14  a felony pursuant to a Superseding Indictment.  Now, in this

15  proceeding I'm going to advise you of the charge against you

16  and the rights that you have, and those rights do include your

17  right to be represented by an attorney.  We'll also address the

18  issue of bond or your detention.

19             Now, if there's anything that I say that you do not

20  understand, please let me know and I will explain it to you.

21             You may also speak to an attorney at any time during

22  this hearing.  Mr. Hernandez is here today seated next to you.

23  If you'd like to speak with him at any time, you may do so, and

24  if you'd like to speak with him in private, just let me know

25  and we'll take a break and I'll give you that opportunity.

1  Do you understand?

2          THE DEFENDANT:  Yes, Your Honor.  Thank you.

3          THE COURT:  All right.  At the outset, let me advise

4  you that you do have the right to remain silent.  That means

5  you're not required to make any statements to the Court or to

6  law enforcement, and you should know that any statement that

7  you make may be used against you.  Do you understand your right

8  to remain silent?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  All right.  So you've received a copy of

11  the Superseding Indictment; is that correct?

12          THE DEFENDANT:  Yes, Your Honor, I have.

13          THE COURT:  At this time I'm going to summarize the

14  charge against you.

15          In Count One you've been charged with conspiracy to

16  commit an offense against the United States, that is, to act as

17  an agent of a foreign Government or foreign officials, to wit

18  the Russian Federation and officials of that Government,

19  without prior notification to the Attorney General as required

20  by law, in violation of 18 U.S.C. Section 951(a).

21          All right.  Mr. Marcet, is there anything -- sorry.

22  All in violation of 18 U.S.C. Section 371.

23          Now, Mr. Marcet, is there anything you'd like to add

24  regarding the charge?

25          MR. MARCET:  No, Your Honor, that's accurate.

1          THE COURT:  All right.  Mr. Romain, do you understand

2     the charge against you?

3          THE DEFENDANT:  Not really, Your Honor.

4          THE COURT:  All right.  What don't you understand

5     about it?

6          So, just to be clear, I'm not asking you to plead at

7     this time, whether you are admitting to the charge.  I just

8     want to make sure you understand what you have been charged

9     with.  Do you understand the difference?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  All right.  And would you -- before

12     addressing the Court, would you like to consult with your

13     attorney?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  All right.  Why don't you speak to your

16     attorney and then if you want to ask the Court a question,

17     you're free to do so, okay?

18          THE DEFENDANT:  Thank you so much.

19          THE COURT:  All right.  Let me know when you're ready

20     to proceed.

21               *(Discussion had off the record*

22                *between Mr. Hernandez and the defendant.)*

23          MR. HERNANDEZ:  Your Honor, he under -- I think he

24     understands what the charge is.  His questions are more dealing

25     with, I think, what the actual evidence might be or the

specifics, but I told him that I would discuss that with him once I get discovery.

THE COURT: All right. Thank you, Mr. Hernandez.

Is that correct, Mr. Romain, that you understand what you've been charged with but you just have some questions about the evidence against you?

THE DEFENDANT: Absolutely, Your Honor.

THE COURT: All right. Thank you very much.

All right. Anything further, Mr. Hernandez?

MR. HERNANDEZ: No, Your Honor. I -- we're prepared to proceed with arraignment if the Court is.

THE COURT: All right. Well, before we get to that step, let me advise your client that you do -- he is entitled to an attorney in this case. He may consult with an attorney and be represented at all stages of these criminal proceedings, both in and out of court, and your attorney may be present during any questioning by law enforcement. Now, you have the right to hire your own attorney of your own choosing. If you cannot afford an attorney, the Court will appoint an attorney to represent you at no cost to you, or you can represent yourself.

Now, I have with me on the bench a financial affidavit that appears to be signed by you. Did you fill out this financial affidavit?

THE DEFENDANT: Yes, Your Honor.

1          THE COURT:  All right.  Is the information you

2    provided true and correct to the best of your knowledge?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  All right.  Based on the information that

5    you provide in the financial affidavit, the Court finds you do

6    qualify for a Court appointed attorney.  Would you like the

7    Court to appoint an attorney to represent you?

8          THE DEFENDANT:  Absolutely, Your Honor.

9          THE COURT:  All right.  The Court would appoint

10   Mr. Hernandez to represent you.

11         Mr. Hernandez, do you accept the appointment?

12         MR. HERNANDEZ:  Yes.  Yes, sir.

13         THE COURT:  All right.  Thank you.

14         Now, Mr. Romain, please be advised that if you're not

15   a United States citizen, that you may request that an attorney

16   for the Government or a Federal law enforcement official notify

17   a consular officer from your country of nationality that you've

18   been arrested.  And please know that even without making this

19   request there may be a treaty or international agreement which

20   may require consular notification.

21         Now, Mr. Marcet, as required by Rule 5(f), the

22   United States is ordered to produce all exculpatory evidence to

23   defendant pursuant to Brady v. Maryland and its progeny, and

24   failing to do so in a timely manner may result in sanctions,

25   including exclusion of evidence, adverse jury instruction,

dismissal of charges and contempt proceedings.  Do you understand, sir?

MR. MARCET:  Yes, Your Honor.

THE COURT:  Thank you, Mr. Marcet.

All right.  Mr. Romain, you've received a copy of the Superseding Indictment and you've heard the Court summarize the charge against you.  You do have the right to a formal reading of the Indictment.

Mr. Hernandez, would your client like a formal reading?

MR. HERNANDEZ:  Yes, Your Honor.  I have -- I have received a copy, he has, and we've discussed it and I'm prepared at this time to proceed with arraignment.

THE COURT:  Would he like to waive formal reading?

MR. HERNANDEZ:  I would waive formal reading.

THE COURT:  All right.  And how does your client plead with respect to Count One of the Superseding Indictment?

MR. HERNANDEZ:  Your Honor, he would be pleading not guilty, and we do wish to participate in Rule 16 discovery.

THE COURT:  All right.  Thank you, sir.

The Court will enter a not guilty plea as to Count One of the Superseding Indictment.

Let the record reflect defendant has now been arraigned.  The Court will grant his motion to participate in Rule 16 discovery.

1   Mr. Marcet, is the Government seeking reciprocal

2 discovery?

3   MR. MARCET: Yes, Your Honor.

4   THE COURT: All right. That motion is granted as

5 well. The Court will issue a standard criminal scheduling

6 order which provides for the exchange of discovery and sets

7 forth other pertinent dates for this case.

8   Now, Mr. Romain, please be advised that your case has

9 been assigned to United States District Judge William Jung, and

10 Judge Jung has set this case for a telephonic status conference

11 on December 14, 2023 at 11:00 a.m., and he set this case for

12 the trial term beginning February 2024.

13   MR. MARCET: Your Honor, that's for the

14 co-defendants.

15   THE COURT: Sorry.

16   MR. MARCET: I'm not -- they already had their status

17 conference, but there is another status conference for one of

18 the co-defendants scheduled for June 15th at 11:00 a.m.

19   THE COURT: Yeah, this is for his co-defendants.

20   All right. So, I'm sorry, I was incorrect,

21 Mr. Romain. Let me correct that.

22   Mr. Marcet, you said the status conference is

23 scheduled for June, what date?

24   MR. MARCET: June -- the status conference of

25 co-defendant Jesse Nevel is June 15th at 11:00 a.m.

1          THE COURT:  And is that a telephonic status

2    conference?

3          MR. MARCET:  Yes, I believe so.  It was initially set

4    for in person, but if I recall correctly, the Judge continued

5    it and set it for telephonic.

6          THE COURT:  All right.  Give me one second.

7          Mr. Calderon, would you pull the docket and see when

8    that status conference is and whether it's telephonic or in

9    person.

10         COURTROOM DEPUTY:  The last order, which was

11   May 12th, says the Court is rescheduling the status conference

12   with a new hearing date June 15th at 11:00.  Counsel -- it is

13   to be telephonic, and it's directing counsel to call the toll

14   free number.

15         THE COURT:  Okay.

16         MR. MARCET:  Yeah, I see the same thing.

17         THE COURT:  All right.  I apologize, Mr. Romain.

18         So there's multiple co-defendants in this case, and

19   Judge Jung has set some of them for a status conference in

20   December and for the trial term in February of next year, but

21   since you have just been arrested, your status conference will

22   be sooner, and so Judge Jung is going to have your status

23   conference on June 15th at 11:00 a.m., it's a telephonic status

24   conference, and then your case is going to be set for the trial

25   term beginning July of 2023.

1          MR. HERNANDEZ:  July of 2023?

2          THE COURT:  Yeah, July of this year.  Yeah.

3          MR. HERNANDEZ:  The trial -- okay.  I understand,

4     Your Honor.  I'll address it with --

5          THE COURT:  So because of the Speedy -- Speedy Trial

6     Act, it's going to be set --

7          COURTROOM DEPUTY:  July 3rd.

8          THE COURT:  Okay.  It will be set for the July trial

9     term and the status conference will then be on June 15th at

10    11:00 a.m.

11         All right.  So is everyone clear as to when the next

12    hearing is?  It's a telephonic status hearing on June 15th at

13    11:00 a.m., and Judge Jung will set this case for the trial

14    term beginning July of this year, 2023.

15         Do you understand, Mr. Hernandez?

16         MR. HERNANDEZ:  Yes, Your Honor.  There are -- there

17    is a couple matters that my client asked me to address with the

18    Court.

19         THE COURT:  Okay.

20         MR. HERNANDEZ:  He is presently housed at the

21    Hernando County Jail in Spring Hill, and he has not been

22    getting his mental health medication and it's affecting his

23    ability to function.  I'm not sure of all the medication that

24    we're talking about.  Mr. Romain, I guess, could be more

25    specific.  But I did want the Court to know, in addition to

1  mental health, he is in the process -- he's a transgender, he's

2  in the process of transferring to a female, and apparently he's

3  not getting that medication as well, so I just wanted the Court

4  to know, because obviously when we go to the status conference

5  I'll be asking for more time and I'm sure that Judge Jung will

6  be sympathetic to that request, and I wanted to make sure that

7  my client was getting the medication he's supposed to be

8  getting.

9         THE COURT:  All right.  Well, we'll take up the issue

10  of bond or detention first, because if your client is detained

11  then I can issue a medical order, we can address that with the

12  United States Marshal, but if your client is released then it

13  will be up to -- I'm sorry, what pronoun would you like for me

14  to use for you?

15         THE DEFENDANT:  She or they.

16         THE COURT:  Okay.  I apologize.

17         Whatever medications she's entitled to will be up to

18  her if she's released.  If she's detained then that will be the

19  responsibility of the United States.

20         MR. HERNANDEZ:  Your Honor, in regard -- is the Court

21  wanting me to address the issue of detention?

22         THE COURT:  Well, I'm going to ask the Government for

23  their position first.

24         MR. HERNANDEZ:  Yes, Your Honor.

25         THE COURT:  And then I'll give you an opportunity to

1    respond.  All right?

2           All right.  So, Ms. Romain, you are entitled to a

3    bond hearing, and that's a hearing to determine whether you are

4    eligible for bond, and, if so, what terms and conditions, or

5    whether you should be detained because you're a risk of flight,

6    a danger to the community or both.

7           Mr. Marcet, what's the Government's position

8    regarding bond or detention?

9           MR. MARCET:  Your Honor, we're requesting pretrial

10   detention under 3142(f)(2)(A).  The defendant is a risk of

11   non-appearance.  And I just want to note one thing that I've

12   discussed with defense counsel that's not clear from -- from

13   the Pretrial Services Report.  The defendant still has --

14   I think it says pending a 32 count Superseding Indictment in

15   Georgia and the defendant is still detained on those charges.

16   I believe at some point he was issued a bond, but the defendant

17   never made bond and was brought over to the Atlanta Federal

18   Detention Center from the State jail, so --

19           THE COURT:  So he was -- he was writted over from --

20           MR. MARCET:  It was unusual.  They showed up with a

21   writ and he was given into their custody, so -- essentially he

22   was writted over, but technically I believe they arrested the

23   defendant at the jail.

24           THE COURT:  Okay.  So it's your understanding the

25   defendant is detained on the State violations in Georgia, and

as far as your position with respect to whether the Court

should order detention in this case, in addition to the

question of whether detention would be moot, the Government is

moving for detention under 3142(f)(2)(A).  Is there any

argument you'd like to make as respect to the factors in

18 U.S.C. Section 3142(g)?

MR. MARCET:  Your Honor, I believe I spoke with the

defense and they were going to reserve on the issue, but if

you'd like me to make the argument, I'm happy to.

THE COURT:  Anything you'd like to put on the record,

Mr. Marcet.

MR. MARCET:  Oh.  Yes, Your Honor.

So, first, looking at the 3142(g) factors, the nature

of the offense, this is a very serious offense.  The defendant

is charged with conspiring with an agent of the Russian

Government knowingly, knowing that the person was working on

behalf of the Russian Government, to engage in direct action in

the United States.  That direct action included targeting U.S.

media companies and U.S. social media companies that the

Russian Government deemed to have taken action against Russian

interests, that included flying at the expense of the Russian

Government from Atlanta to San Francisco in order to protest at

Facebook headquarters, or Meta headquarters, because of actions

that the social media company had taken that the Russian

Government was displeased with, that includes protests at the

Georgia State Capitol Building as well as protests at the
headquarters of various media outlets, in essence, trying to
punish those media outlets on behalf of the Russian Government
for -- for truthfully reporting the news.

The defendant was paid by the Russian Government for
doing this, paid in crypto currency, as well as having his
travel paid for.  The -- in addition, the defendant has
substantial ties overseas, being this is his Russian Government
handler, Aleksandr Ionov.  The defendant made admissions on
video recordings that were publicly available that he knew he
was working on behalf of the Kremlin in doing these activities.
So the defendant's offense shows that he has substantial
international ties and could pose a risk of non-appearance.

The weight of the evidence is overwhelming.  The
evidence comes from the defendant's own communications with
Mr. Ionov obtained by search warrant that showed the defendant
time and time again taking direction, collaborating with
Mr. Ionov and then engaging in action, as well as publishing
articles at the direction of Mr. Ionov in the United States,
and as I said, he publicly acknowledged knowing Mr. Ionov was
acting on behalf of the Russian Government.

In addition, the defendant's history and
characteristics are concerning.  First, he has been in custody
since June of 2022, does not have any -- does not have any
stable ties or stable employment.  The current charges that

he's facing are very serious in Georgia, they include numerous
racketeering charges, charges that in essence amount to rape,
aggravated sodomy.  As I understand it, the facts of that case
relate to a gang that the defendant was operating that was in
essence kidnapping homeless people, forcing them to work on
behalf of the gang, and then as punishment for noncompliance
with his orders, raping the homeless people at gunpoint.

In addition, when he was arrested in June of 2022,
there was a substantial standoff with the arresting officers at
the house of his gang, the Black Hammer Gang, and it
resulted -- during the course of the standoff, one of the
members of Black Hammer committed suicide before everyone could
be safely taken into custody and the homeless people who had
been effectively kidnapped could be freed.  And so that's --
those -- those charges are particularly concerning as it
relates to the defendant's conduct at the -- prior to his
arrest.  And so for all those reasons, we believe that the
defendant would pose a risk of non-appearance.

THE COURT:  Thank you.

Mr. Hernandez, response?

MR. HERNANDEZ:  Your Honor, as the Government
indicated, at this point I would want -- unless the Court was
inclined to give Mr. Romain a signature bond, I would be moving
to reserve.  At this point I cannot identify any moneys or
properties that could be offered as collateral, and as I

understand, although I just got on this matter just an hour or so ago, is that because of the fact that he still would have to post significant bonds in Georgia, it would be better for me to be better prepared at a future date, if necessary, to file a motion.

THE COURT:  All right.  And just to be clear, you're not asking for a continuance, you're reserving, meaning --

MR. HERNANDEZ:  Yes, sir.

THE COURT:  -- the Court will order him detained and you can move to reopen if new evidence becomes available that's not available to you here today.  Is that correct?

MR. HERNANDEZ:  Yes, Your Honor.

THE COURT:  All right.  After considering the Government's proffer, the defense response, and reviewing the Pretrial Services Report and the addendum to the report, as well as considering the factors in 18 U.S.C. Section 3142(g), the Court finds the defendant is due to be detained.

The Government has satisfied its burden of establishing by a preponderance of the evidence that there are no condition or combination of conditions of release that will reasonably assure the defendant's appearance as required.  The Court will list some of those reasons now and list other reasons in its written order of detention.

Those reasons include that the weight of the evidence against the defendant is strong, as indicated by the prosecutor

1    here today, the defendant's very disturbing criminal history as

2    well as the history for which he faces significant charges in

3    the State of Georgia, and those charges do include a history of

4    violence, as described by the Government, as well as the

5    defendant's lack of stable employment and lack of significant

6    community and family ties to this district, as well as, and

7    this is very significant in the Court's determination, the

8    defendant's significant ties to others outside the

9    United States, in particular the defendant's alleged handler

10    with the Russian Federation.

11          In addition, the Court notes that it's been

12    represented to the Court that defendant has been detained on

13    his State charges, and therefore it appears that the issue of

14    detention would be moot, meaning even if the Court were to

15    grant the defendant release at this time, he would be detained

16    under those State charges.

17          So for those reasons and for others, which the Court

18    will put in its written order of detention, the Court orders

19    the defendant detained.

20          Now, with respect to the medical order,

21    Mr. Hernandez, the Court will issue a medical order and I will

22    direct the United States Marshal and the person in charge of

23    the facility in which the defendant is housed to provide her

24    with a medical evaluation and any treatment that they deem

25    necessary.

1          Is there anything further from the Government,
2   Mr. Marcet?
3          MR. MARCET:  No, nothing on behalf of the
4   United States.
5          THE COURT:  Mr. Hernandez?
6          MR. HERNANDEZ:  No, Your Honor, not at this time.
7          THE COURT:  All right.  Thank you both, and
8   thank you, Ms. Romain.
9          We're adjourned.
10          THE DEFENDANT:  Thank you, Your Honor.
11                    - - - - -
12          (Proceedings concluded at 3:34 p.m.)
13                    - - - - -
14
15
16
17
18
19
20
21
22
23
24
25

1      C E R T I F I C A T E

2

3           This is to certify that the foregoing transcript of

4  proceedings taken in a initial appearance, arraignment and

5  detention hearing in the United States District Court is a true

6  and accurate transcript of the proceedings taken by me in

7  machine shorthand from a digital audio recording and

8  transcribed by computer under my supervision, this the 15th day

9  of February, 2024.

10

11

12                                    /S/ DAVID J. COLLIER

13

14                                    DAVID J. COLLIER

15                                    OFFICIAL COURT REPORTER

16

17

18

19

20

21

22

23

24

25