UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

                          Case No.: 8:22-cr-259-WFJ/AEP

v.

OMALI YESHITELA,
PENNY HESS,
JESSE NEVEL, and
AUGUSTUS C. ROMAIN, JR.

## UNITED STATES' RESPONSE TO THE DEFENDANTS' OBJECTIONS TO THE MAGISTRATE'S REPORT AND RECOMMENDATIONS

United States Magistrate Judge Anthony E. Porcelli has issued a Report and Recommendation (the "R&R") recommending that this Court deny the Defendants' Motion to Dismiss the Superseding Indictment. In their Objections to the R&R, the Defendants argue that the Superseding Indictment fails to adequately plead the elements of a violation of Section 951, and that this prosecution—which focuses on the Defendants' seven-year conspiracy to work with a hostile foreign intelligence service to, in their own words, engage "the U.S. and Europe in serious struggle" and "s[o]w division inside the U.S."—is based solely on the content of their speech and has nothing to do with the United States' national security.

The Court should overrule the Defendants' Objections and adopt Judge Porcelli's thorough and thoughtful R&R. The Superseding Indictment adequately pleads the elements of the charged offenses. Moreover, the Superseding Indictment does not violate the First Amendment because it properly charges the Defendants for conspiring to act—and acting—as undisclosed agents of the Russian government, not

because of the content of their speech. For these reasons, the Defendants' Objections are without merit and the Motion to Dismiss should be denied.

## I.   BACKGROUND

### A.   Procedural History

On April 13, 2023, defendants Yeshitela, Hess, Nevel, and Romain (the "Defendants") were charged by Superseding Indictment with conspiring to act as agents of the Russian government without notification to the Attorney General, in violation of 18 U.S.C. §§ 371 and 951. Yeshitela, Hess, and Nevel were further charged with a substantive violation of Section 951.

On July 17, 2023, Hess filed a Motion to Dismiss the Superseding Indictment (the "Motion") (Dkt. 107).[1] Yeshitela, Nevel, and Romain each moved to adopt the Motion, which the Court granted (Dkt. 114, 123, 127). The Motion argued that the Superseding Indictment should be dismissed because it targets "pure political speech," "peaceable assembly," and "the right to advocate dissenting views," *see* Motion at 8–25, and because Section 951 is facially overbroad, *id.* at 26–28. The United States responded in opposition to that Motion (Dkt. 130).

On September 28, 2023, Magistrate Judge Porcelli held oral argument on the Motion to Dismiss. At the oral argument, the Defendants raised a new argument, contending that Section 951 simply does not apply to speech (Dkt. 143 at 9).

---

[1] References to docket entries are cited as "Dkt." followed by the number of the entry. The Superseding Indictment is cited as "SI ¶," and overt acts are cited as "OA ¶," followed by the paragraph number of the overt act.

On January 26, 2024, Magistrate Judge Porcelli issued a R&R recommending that this Court deny the Defendants' Motion to Dismiss (Dkt. 157). In the R&R, Judge Porcelli determined that the Defendants' speech, "when done at the alleged direction of a foreign government," constitutes "acts" within the meaning of Section 951 (*Id.* at 9). He further determined that, taken collectively, the Overt Acts in the Superseding Indictment "alleged matters beyond pure speech, as they include the acts of publishing, traveling, drafting reports, and hosting virtual conferences all at the alleged direction of a foreign agent" (*Id.* at 12-13). He further determined that prosecuting the Defendants for those activities under Section 951 did not violate the First Amendment, whether under intermediate or strict scrutiny (*Id.* at 19-20 & n.5).

On February 9, 2024, Defendant Hess filed objections to the R&R (Dkt. 167). Defendant Yeshitela subsequently filed identical objections (Dkt. 170). The Court ordered that, "should [the objections] benefit one defendant they will likewise apply to all" (Dkt. 169).

In their objections, the Defendants argue that the Superseding Indictment fails to sufficiently plead that they acted under the direction or control of the Russian government. Furthermore, they argue that the Superseding Indictment targets them based on the content of their speech in violation of the First Amendment. Finally, the Defendants raise an argument that they belatedly introduced for the first time at the hearing on this motion: namely, that Section 951 does not apply to speech. None of these arguments are meritorious.

## B. Superseding Indictment

The allegations in the Superseding Indictment ("SI") are discussed at length in the United States' Response to the Motion to Dismiss (Dkt. 130 at 3-8), which is incorporated herein by reference.

## II.    LEGAL STANDARDS

### A. Standard of Review

In evaluating objections to a Magistrate Judge's R&R, the District Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The District Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

### B. Motion to Dismiss

Federal Rule of Criminal Procedure 7(c)(1) provides: "The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." An indictment is sufficient if it includes "all elements of the offense and briefly describe[s] the facts of the commission of offense." *United States v. deVegter*, 198 F.3d 1324, 1330 (11th Cir. 1999).

A motion to dismiss an indictment may only be decided prior to trial if the court can rule on the motion "without a trial on the merits." Fed. R. Crim. P. 12(b)(1). This requirement is met only if a "trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the

validity of the [motion]." *United States v. Covington*, 395 U.S. 57, 60 (1969). Therefore, in analyzing a motion to dismiss, the court is limited to the allegations in the indictment and must read those allegations in the light most favorable to the government. *See United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987).

## III.  ANALYSIS

### A. The Superseding Indictment adequately pleads that the Defendants conspired to act, and acted, as agents of the Russian government or officers thereof.

The Superseding Indictment adequately pleads each of the elements of a criminal violation of 18 U.S.C. §§ 371 and 951. Section 371 makes it a crime for "two or more persons conspire either to commit any offense against the United States . . . and one or more of such persons do any act to effect the object of the conspiracy." 18 U.S.C. § 371. Section 951 makes it a crime for an individual other than an officially recognized diplomatic or consular officer to "act[] in the United States as an agent of a foreign government without prior notification to the Attorney General." 18 U.S.C. § 951(a).

Count 1 alleges each of the elements of a conspiracy to violate Section 951, specifically, that each of the Defendants "knowingly and willfully" conspired "to act as an agent of a foreign government and foreign officials, to wit, the Russian Federation and officials of that government, without prior notification to the Attorney General, as required by law." *See* SI at 9. Count 1 also contains detailed factual allegations concerning the manner and means used by the co-conspirators to commit their crime, as well as ninety-five specific overt acts taken by the Defendants

or their co-conspirators in furtherance of the conspiracy. *Id.* at 10-34. Count 2 incorporates those detailed factual allegations by reference and alleges each of the elements of a substantive Section 951 violation, alleging that Defendants Yeshitela, Hess, and Nevel "did knowingly act within the United States as an agent of a foreign government and foreign officials, to wit, the Russian Federation and officials of that government, without prior notification to the Attorney General, as required by law." *See* SI at 35–36.

Thus, the Superseding Indictment adequately alleges that the Defendants conspired to violate, and violated, Section 951. That is all that is required, as an indictment need only be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7. Indeed, "[a]n indictment need do little more than track the language of the statute charged to be sufficient." *United States v. Adkinson*, 135 F.3d 1363, 1375 n.37 (11th Cir. 1998). In this case, the Superseding Indictment easily clears that threshold.

The Defendants nevertheless complain—for the first time in their Objections— that the Superseding Indictment "falls well short of alleging that the [Defendants] were under the direction or control of Defendant Ionov or of Russia."[2] This allegation misunderstands the language of Section 951.

---

[2] A District Court need not consider arguments raised for the first time in objections to a magistrate judge's report and recommendation. *See Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009).

Section 951 defines an "agent of a foreign government" as "an individual who agrees to operate within the United States subject to the direction or control of a foreign government or official." 18 U.S.C. § 951(d). Considering this statutory definition, when the Superseding Indictment alleges that the Defendants conspired to act—and acted—as "an agent of a foreign government and foreign officials, to wit, the Russian Federation and officials of that government," SI at 9, 35, it is alleging that the Defendants acted at the "direction or control of the Russian federation." This quotation of the elements of the statute is sufficient, there is no need to further parrot the definitional language. *See United States v. Hoover*, 635 F.Supp.3d 1305, 1316 (M.D. Fla. 2022) ("Failure to specifically cite to, or include the text of a definitional provision in an Indictment's count does not render it insufficient.") (*citing United States v. Hassoun*, 477 F.Supp.2d 1210, 1227 n.9 (S.D. Fla. 2007)).

The Defendants further urge the Court to consider each of the Overt Acts in the Superseding Indictment in isolation, and to infer—with the help of additional information not contained in the Superseding Indictment—that the Russian government did not exercise a sufficient level of control over the Defendants (Dkt. 167 at 16-17). For starters, this argument mischaracterizes the purpose of the overt act requirement in a conspiracy prosecution. An overt act is any act that "furthers the purpose of the conspiracy." *United States v. Campa*, 529 F.3d 980, 1002 (11th Cir. 2008). An overt act need not "be the substantive crime charged in the indictment as the object of the conspiracy," nor must an overt act "taken by itself, even be criminal in nature." *United States v. Yates*, 354 U.S. 298, 334 (1957). Rather, "[t]he function of

the overt act in a conspiracy prosecution is simply to manifest that the conspiracy is at work." *Id.* Thus, the overt acts are not each independent Section 951 violations, and each overt act is not required to establish that the actions alleged therein were being done at the direction or control of a foreign power.

Moreover, the Defendants' argument also misunderstands the nature of the agency relationship criminalized by Section 951. As the Fourth Circuit has held, the relationship between the foreign government and its agent "does not need to mirror an employee's control over the workings of an employee; a lesser degree of 'direction' is sufficient." *United States v. Rafiekian*, 991 F.3d 529, 541 (4th Cir. 2021). Indeed, "an independent contractor may also be an agent—while still retaining significant discretion over the particulars of performance—so long as he 'contracts to act on account of the [foreign government].'" *Id.* at 540 (quoting Restatement (Second) of Agency §§ 2 cmt. b, 14N, 220 cmt. e (Am. L. Inst. 1958)). Thus, even if the Defendants introduce at trial the evidence proffered in their briefing—establishing that their interests aligned with the Russian government, that they may have disagreed with some of the Russian government's directives, or that they exercised discretion over how to carry those directives out—it will merely confirm their guilt of the charged crimes. In any event, at the motion to dismiss stage, the Court is limited to considering the allegations in the Superseding Indictment, *see Torkington*, 812 F.2d at 1354, which adequately plead a violation of Section 951.

### B. The Superseding Indictment properly charges the Defendants for acting as undisclosed agents of the Russian government.

The Superseding Indictment charges the Defendants for agreeing to act—and acting—as agents of the Russian government without giving the requisite notice to the Attorney General. Contrary to the Defendants' claims, the charges do *not* turn on the content of their pro-Russian speech. This prosecution is not content-based merely because certain overt acts refer to speech or other First Amendment protected activity. *See Giboney v. Empire Storage & Ice Co.,* 336 U.S. 490, 502 (1949) ("[I]t has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed."); *Wisconsin v. Mitchell,* 508 U.S. 476, 489 (1993) (holding that that the First Amendment does not prohibit "the evidentiary use of speech to establish the elements of a crime or to prove motive or intent.").

The overt acts in the Superseding Indictment discuss a wide variety of seemingly disparate newspaper articles, speeches, travel, payments, drafting of reports, and other actions by the Defendants and their co-conspirators, including: traveling from the United States to Russia to meet with government officials and others conspirators on multiple occasions, OA ¶¶1-4, 15-18; publishing a petition alleging genocide against African peoples by the United States at Ionov's direction, *see* OA ¶¶5–14; traveling around the United States to engage in a series of protests that was "envision[ed]" and funded by Ionov to promote the genocide petition, *see*

OA ¶¶19–26; publishing an article in support of the Russian Olympic team at Ionov's direction, *see* OA ¶¶27–30; conducting a demonstration to promote California secession, in order to cause "turmoil" at the behest of Russian intelligence, *see* OA ¶¶32–39; conspiring to help lobby to free Russian detainees, OA ¶43; facilitating Russian oversight of candidates in U.S. elections, OA ¶¶31, 44–53; promoting the independence of Russian-backed Ukrainian breakaway states under Ionov's direction and control, OA ¶¶54–59; passing information to Ionov to report to his FSB handlers, OA ¶¶60–65; parroting Russian government propaganda concerning the invasion of Ukraine after being enlisted by Ionov to serve in the Russian government's "information war" against the United States, OA ¶¶66–75; and traveling around the United States to protest against U.S. social media and news companies at Ionov's direction, in order to punish the companies for views and actions that displeased the Russian government, OA ¶¶83–94. The common theme in these overt acts is not any particular content or message, but rather the hidden hand of the Russian government, pulling the strings in order to—in the Defendants' own words—"utilize forces inside of the U.S. to s[o]w division inside the U.S." OA ¶18.[3]

---

[3] The Defendants cite the timing of the prosecution in this case—with Defendant Ionov being charged shortly after the Defendants engaged in a series of recorded and publicized speeches, conferences, and protests in support of the Russian invasion of Ukraine at Ionov's direction between March and June of 2022—as establishing that the charges in this case are based on the content of their speech (Dkt. 167 at 9-10). This timing merely shows that the Defendants' conduct between March and June of 2022—to include numerous, publicly available videos in which they recorded themselves carrying out the Russian government's directives—constituted compelling and easily obtained evidence of the charged crimes.

To the extent that some of the conduct for which the Defendants are being prosecuted constitutes "speech," the Superseding Indictment easily passes muster under the First Amendment. In evaluating an as-applied First Amendment challenge to a content-neutral statute,[4] the Court must first determine whether the government's asserted interest in the prosecution is "unrelated to the suppression of free expression." *Texas v. Johnson*, 491 U.S. 397 (1983). If the interest underlying the prosecution is unrelated to the suppression of free expression, then the "less stringent standard . . . for regulations of noncommunicative conduct controls." *Id.* at 403 (citing *United States v. O'Brien*, 391 U.S. 367, 377 (1968)). The standard set forth in *Johnson* and *O'Brien* requires only that the government act with "a substantial governmental interest unrelated to the suppression of free speech." *Fort Lauderdale*, 11 F.4th at 1291. For the reasons explained below, Magistrate Judge Porcelli correctly applied this standard to hold that the instant prosecution under Section 951 is constitutional (Dkt. 157 at 18-19 (rejecting Defendants' argument that prosecution is "content-specific" and holding that Section 951 survives intermediate scrutiny)).

Under *Johnson*, the Court must first determine if the prosecution is "unrelated to the suppression of free expression." 491 U.S. at 403. Here, the Superseding Indictment contains sufficient factual allegations to establish that the Government interest in this prosecution is (1) "unrelated to the suppression of free speech," and (2) "substantial." *Id.* Therefore, the Defendants' as-applied challenge fails.

---

[4] The Defendants concede that Section 951 is facially valid and content neutral (Dkt 167 at 7).

The crux of the Superseding Indictment is the allegation that the Defendants "act[ed] as an agent of a foreign government and foreign officials . . . without prior notification to the Attorney General." SI at 9, 36. The allegations further place the Defendants' conduct into the necessary historical context of the Russian government's goals to "expand Russia's sphere of influence" through "influence operations." *Id.* ¶21. These influence operations "recruit U.S. persons to advance Russia's operational goals," including through "amplify[ing] and reinforc[ing] Russia's messaging campaigns in furtherance of its goal of destabilizing Western societies," and "propagat[ing] disinformation," among other means. *Id.* ¶¶22–23. Thus, the interests justifying the prosecution of the Defendants under Section 951 have no relation to their exercise of free expression. Rather, these interests relate only to the Defendants' agreement to act—covertly, without notification to the Attorney General—at the direction and control of the Russian government as part of a secret, Russian government-controlled influence operation.

The Supreme Court has held that unmasking these types of foreign-directed conspiracies serves "the highest duty" of the United States Government:

> Means for effective resistance against foreign incursion – whether in the form of organizations which function, in some technical sense, as "agents" of a foreign power, or in the form of organizations which, by complete dedication and obedience to foreign directives, make themselves the instruments of a foreign power-may not be denied to the national legislature. To preserve its independence, and give security against foreign aggression and encroachment, is the highest duty of every nation, and to attain these ends nearly all other considerations are to be subordinated. It matters not in what form such aggression and encroachment come.

*Communist Party of U.S. v. Subversive Activities Control Bd.*, 367 U.S. 1, 88-90 (1961).

Unmasking the Defendants' role as undisclosed agents of a hostile foreign

intelligence agency constitutes a "substantial" government interest, *O'Brien*, 391 U.S.

at 377.

In an attempt to undermine the United States' interest underpinning the

enforcement of Section 951, the Defendants contend that "this is not a national

security case" (Dkt. 167 at 15). That assertion could not be farther from the truth.

For over seven years, the Defendants allowed the FSB to hide behind their

organization, in order to—in their own words—engage "the U.S. and Europe in

serious struggle" and "s[o]w division inside the U.S." OA ¶18. The Defendants'

activities fit squarely within the longstanding historical framework of the Russian

government's attempts to harm the United States and its allies by using undisclosed

agents on U.S. soil to "expand Russia's sphere of influence," "create wedges that

reduce trust and confidence in democratic processes," "weaken U.S. partnerships

with European allies," and "encourage anti-U.S. and anti-Western political views."

SI at 7-8. The Defendants' undisclosed work for a hostile foreign intelligence service

to secretly undermine American democracy, influence American public opinion, and

destroy America's international alliances plainly constitute matters of American

national security.

Notably, the Defendants' actions in this case were similar to the actions at

issue in prior prosecutions under Section 951. For example, in *United States v.*

*Rafiekian*, the Section 951 conspiracy involved speeches, publication of Op-Eds, and

the creation of a documentary disparaging a Turkish dissident in the hopes that he would be extradited to Turkey. 991 F.3d 529, 535-36 (4th Cir. 2021). In *United States v. Alshahhi*, the goals of the Section 951 conspiracy were to "influence public opinion and foreign policy positions" of a political candidate, "relay non-public information about the foreign policy positions and decisions" of that candidate, "develop a backchannel line of communication" between that candidate and the foreign government, and "design plans to increase the [foreign government's] political influence and promote its foreign policy preferences." 2022 WL 2239624, at *1 (E.D.N.Y. June 22, 2022). In the prosecution of Russian foreign agent Mariia Butina—who also worked with Defendant Ionov, *see* OA ¶44—the Indictment alleged that she organized and attended political meetings, wrote reports, established unofficial lines of communication with the Russian government, and promoted pro-Russian views. *United States v. Butina*, No. 18-cr-00218-TSC, Dkt. No. 7 (D.D.C. July 17, 2018). In *United States v. Dumeisi*, the Section 951 violation involved, among other things, publishing newspaper articles at the direction of and to further the interests of a foreign government, reporting information to a foreign intelligence service, receiving payments from a foreign intelligence service, and having telephone conferences with a foreign intelligence service, 424 F.3d 566, 581 (7th Cir. 2005), all activities engaged in by the Defendants in this case. Thus, as the Eleventh Circuit has held, Section 951 "creates a plethora of possibilities under which those engaged in purportedly legal conduct on behalf of a foreign government could be convicted." *United States v. Duran*, 595 F.3d 1283, 1295 (11th Cir. 2010).

The Seventh Circuit in *Dumeisi* confirmed that otherwise First Amendment-protected conduct, such as publishing newspaper articles, can provide the basis for a violation of Section 951 if done as an agent of a foreign government. In *Dumeisi*, a newspaper owner was charged with conspiring to act as an agent of the Iraqi government without notification to the Attorney General for, among other things, "publishing certain news articles that would enable him to identify opposition members" at the direction of the Iraqi government. *Id.* at 570-71, 579. At trial, the defendant requested that the court instruct the jury that "[i]t is not a violation of 18 U.S.C. § 951(a) to publish a news article." *Id.* at 579. The district court rejected that instruction, instead instructing the jury that:

> The First Amendment to the Constitution protects the right to free speech and the freedom of the press. This means that individuals are permitted to express views that are controversial or even despicable. The speech that Mr. Dumeisi gave at the Iraqi Mission and newspaper articles he authored or published are protected by the First Amendment. The speech and newspaper articles, as well as Mr. Dumeisi's opinion and political views, are to be considered only insofar as they may pertain to issues of motive and intent.

*Id.* Dumeisi was convicted and appealed, arguing that the court's refusal to give his requested instruction created the "very real probability that the jury's verdict rested on the sole basis that Dumeisi printed articles in his newspaper." *Id.*

The Seventh Circuit rejected Dumeisi's First Amendment challenge, holding that his requested instruction that publishing articles cannot violate Section 951 was "misleading as to the law" because "an element of § 951 is acting 'subject to the direction or control of a foreign government or official,' 18 U.S.C. § 951(d), and

there was evidence suggesting that Dumeisi published certain articles at the behest of the [Iraqi government]." *Id.* The court observed that the district court's instruction made clear that "Dumeisi should not, and legally could not, be convicted simply for publishing unpopular or even despicable opinions." *Id.* Moreover, the court explained, the district court's instruction ensured that the defendant's First Amendment-protected speech was not "the sole basis for a guilty verdict." *Id.*[5]

Here, as in *Dumeisi*, the Defendants would not be convicted on the basis of the content of their opinions or publications. Rather, if convicted, it will be because a jury determined, beyond any reasonable doubt, that they acted subject to the direction or control of the Russian government.

The Defendants devote much of their Objections to a misunderstanding of Judge Porcelli's R&R, which they misread as stating that "speech done 'at the alleged direction of a foreign government' rises to the level of 'acts *and consequently loses its First Amendment protections*'" (Dkt. 167 at 5 (emphasis added)). This argument conflates three distinct findings by Judge Porcelli. First—in response to an argument that the Defendants first put forth during oral argument—Judge Porcelli determined

---

[5] Judge Porcelli correctly concluded that the Defendants misread *Dumeisi* as holding that publishing articles at the direction of a foreign government cannot form the basis of a Section 951 conviction (Dkt. 157 at 9-10). In rejecting Dumeisi's argument that the evidence "established nothing more than that he gathered publicly accessible information, published news articles, and communicated with foreign consular officials" the Seventh Circuit pointed to "ample evidence that Dumeisi acted knowingly at the behest of" Iraqi intelligence, including "evidence that Dumeisi initiated contact with the [Iraqi government] and offered to publish articles supplied by them" and that he "printed provocative articles in his paper in order to learn more about" Iraqi dissidents. *Dumeisi*, 424 F.3d at 581. Thus, the Court clearly determined that publishing articles at the direction of Iraqi intelligence was a legitimate basis for Dumeisi's conviction.

that the term "acts" in Section 951 does, in fact, encompass the Defendants' speech as alleged in the Superseding Indictment because the speech was done at the direction and control of a foreign government (Dkt. 157 at 9). Second, he determined that the Superseding Indictment "alleged matters beyond pure speech" such as "the acts of publishing, traveling, drafting reports, and hosting virtual conferences all at the alleged direction of a foreign agent" (Dkt. 157 at 12-13). And third, he determined that this prosecution under Section 951 does not violate the First Amendment because Section 951 is a content-neutral statute that is narrowly tailored to serve a significant government interest (Dkt. 157 at 13-20). Thus, the Defendants' contention that Judge Porcelli misconstrued First Amendment precedents to conclude that their speech should receive no constitutional protection is simply incorrect.

The Defendants rely heavily on *De Jonge v. State of Oregon*, 299 U.S. 353 (1937), which they argue establishes that the "First Amendment demands that political speech be judged by the content of the utterances, and not the relations of the speaker" (Dkt. 167 at 6). In *De Jonge*, the defendant was convicted of violating a criminal syndicalism statute solely for "assist[ing] in the conduct of a public meeting, albeit otherwise lawful, which was held under the auspices of the Communist Party." *Id.* at 362. The statute at issue directly criminalized speech based on its content, making it unlawful to advocate for the use of unlawful acts to effect political change,

or to organize any group that so advocates. *Id.* at 356 n.1.[6] The statute thereby effectively outlawed any meetings of the Communist Party for any purpose. *Id.* at 362–63. The Supreme Court observed that it was well within the States' power to "protect themselves from the abuse of privileges of our institutions through an attempted substitution of force and violence in the place of peaceful political action," but determined that the complete prohibition in the Oregon statute went too far. *Id.* at 363.

The statute at issue in *De Jonge* criminalized speech based solely on its content and assembly based solely on the viewpoint of the assembled group. *See supra* n.6. Section 951 is entirely distinguishable from the law at issue in *De Jonge* because it does not regulate speech based on its content, nor does it forbid any speech, assembly, publications, or other First Amendment-protected conduct. Section 951 merely requires that individuals or groups who intend to act as agents of a foreign government—regardless of their views, speech, or other conduct—first notify the Attorney General. This notification requirement's "incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance," *O'Brien*, 391 U.S. at 377, of the United States' well-founded interest in "knowing the

---

[6] The statute provided, in part: "Any person who, by word of mouth or writing, advocates or teaches the doctrine of criminal syndicalism," or who "organize[s] . . . any society or assemblage or persons which teaches or advocates the doctrine of criminal syndicalism . . . shall be punished by imprisonment . . . for a term of not less than one year or more than 10 years . . . ." *De Jonge*, 299 U.S. at 356 n.1.

identity of those acting on behalf of a foreign government within the United States," *Duran*, 596 F.3d at 1295.

The Defendants also misguidedly rely on *Cohen v. California*, 403 U.S. 15 (1971), another case involving a content-focused statute. In *Cohen*, the Defendant was convicted under a statute that prohibited "offensive conduct" for wearing a jacket displaying the words "Fuck the Draft." *Id.* at 16. The Supreme Court reversed his conviction, holding that the State could not "make the simple public display here involved of this single four-letter expletive a criminal offense." *Id.* at 26.

The statute at issue in *Cohen* was plainly content-based when applied to Cohen's speech. Cohen was convicted only because of the content of his speech—the particular words he used, which were deemed "offensive" within the meaning of the statute. Here, in contrast, the Defendants will not be convicted for the content of their speech, but rather because they were speaking, publishing, acting, reporting, traveling, and engaging in other conduct as agents of the Russian government.

Finally, Judge Porcelli correctly concluded that, even if strict scrutiny applies, this prosecution does not run afoul of the First Amendment (Dkt. 157 at n.5). This is because the governmental interests at stake in this case "are so substantial as to justify infringement on constitutional rights." *Monroe*, 793 F.2d at 573. "It is obvious and unarguable that no governmental interest is more compelling than the security of the Nation." *Haig v. Agee*, 453 U.S. 280, 307 (1981). The Defendants' actions alleged in the Superseding Indictment—facilitating the efforts of a hostile foreign intelligence

service to manipulate debates, elections, and policy in this Country—strike at the heart of American national security interests.

## IV.   CONCLUSION

In view of the foregoing, the United States respectfully requests that the Court overrule the Defendants' Objections and deny the Motion to Dismiss.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By: *s/ Daniel J. Marcet*
DANIEL J. MARCET
RISHA ASOKAN
Assistant United States Attorneys
Florida Bar No. 0114104
400 N. Tampa St., Ste 3200, Tampa, Florida
(813)274-6000 | Daniel.Marcet@usdoj.gov


JENNIFER K. GELLIE
Acting Chief, Counterintelligence
and Export Control Section

By: *s/ Menno Goedman*
MENNO GOEDMAN
Trial Attorney, National Security Division
950 Pennsylvania Ave. NW, Washington, DC
(202)451-7626 | Menno.Goedman@usdoj.gov


COREY R. AMUNDSON
Chief, Public Integrity Section

By: *s/ Demetrius D. Sumner*
DEMETRIUS D. SUMNER
Trial Attorney, Public Integrity Section
PA Bar No. 321406
1301 New York Ave., Washington, D.C.
(202)597-0775 | Demetrius.Sumner2@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 23, 2024, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system which will send a notice of

electronic filing to the following:

Ade Griffin, Esq.
Leonard Goodman, Esq.
Mutaqee Akbar, Esq.
Daniel Hernandez, Esq.

*/s/ Daniel J. Marcet*
Daniel J. Marcet
Assistant United States Attorney
Florida Bar No. 0114104
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
E-mail: Daniel.Marcet@usdoj.gov